UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| REV. EARNEST LEE HOBLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Nos. 05-521, 05-522, 05-523, 05-608, |
| KFC U.S. PROPERTIES, INC., | ) ) | 05-1003, 05-1551, 05-1552, 05-1574, |
| Defendant. | ) ) | 05-1707, 05-1708, 05-2190 (RMC) |

**MEMORANDUM OPINION**

In these cases, the Court confronts a familiar set of facts, earlier discussed in detail in *Hobley v. Ky. Fried Chicken Inc.*, No. 04-492, 2004 U.S. Dist. LEXIS 27552, at *3-7 (D.D.C. Oct. 26, 2004), *aff'd*, 2005 U.S. App. LEXIS 19633 (D.C. Cir. Sept. 9, 2005) (unpublished opinion), *reh'g en banc denied*, 2005 U.S. App. LEXIS 28469 (D.C. Cir. Dec. 22, 2005). Recounted briefly, Plaintiff, Rev. Earnest Lee Hobley, was employed in a Kentucky Fried Chicken ("KFC") restaurant from June 6, 2001, until February 8, 2003, when he resigned after learning that, for performance reasons, he would be demoted from his position as Assistant Unit Manager. KFC then discovered that certain monies were missing and made a complaint against Rev. Hobley to the District of Columbia's Metropolitan Police Department ("MPD"). MPD investigated, an arrest warrant was issued, and Rev. Hobley was arrested and charged with first-degree theft in June 2003. Following his acquittal in February 2004, Rev. Hobley brought two civil suits against KFC in Superior Court: one for wage-and-hour violations relating to the issuance of his final paycheck; another for the common-law tort of false accusation relating to his arrest. After KFC removed the cases, this Court

consolidated and dismissed them, finding both subject to a binding arbitration agreement Rev. Hobley signed when he applied for employment and reaffirmed when he was promoted to Assistant Unit Manager. Rev. Hobley timely appealed.

While his appeal was pending, Rev. Hobley filed eleven additional complaints against KFC in Superior Court, each concerning the same set of issues and facts, and each of which KFC again removed. The Court previously consolidated and stayed five of these actions (Nos. 05-521, 05-522, 05-523, 05-608, and 05-1003) pending resolution of the appeal; it now consolidates the remaining six actions (Nos. 05-1551, 05-1552, 05-1574, 05-1707, 05-1708, and 05-2190) with those cases and, the appeal having been decided in the meantime,[1] lifts the stay. *See* Fed. R. Civ. P. 42(a). Before the Court are KFC's motions to enforce the arbitration agreement and dismiss each case. As discussed below, the Court will dismiss the bulk of these actions as barred by the principles of *res judicata*. As the Court has previously explained, Rev. Hobley must pursue these claims, if at all, in an arbitral forum pursuant to his contractual agreement with KFC.

## I. LEGAL STANDARDS

KFC moves to dismiss Rev. Hobley's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion challenges the adequacy of a complaint on its face, testing whether the plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

[1] The Court of Appeals "held . . . that torts committed after employment ceases may be arbitrable if the claims involve significant aspects of the employment relationship," *Hobley*, 2005 U.S. App. LEXIS 19633, at *2 (internal quotation marks omitted), such as when "determination [of the] claim would entail consideration of numerous facts concerning [the employee's] employment relationship and performance." *Id.* at *3. It also noted that "the federal policy favoring arbitration counsels that doubts about the intended scope of an agreement to arbitrate be resolved in favor of the arbitral forum." *Id.* (citation and internal quotation marks omitted).

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The plaintiff need not plead the elements of a *prima facie* case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). *Res judicata* is an affirmative defense that is generally pleaded in the defendant's answer, but is also properly brought in a pre-answer Rule 12(b)(6) motion when "all relevant facts are shown by the court's own records, of which the court takes notice." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (*res judicata* "may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint"); *see Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997) (noting that courts have permitted parties to assert *res judicata* under Rule 12(b)(6)).

Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). "*Res judicata* plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.' " *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "As the Supreme Court has explained: 'To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Id.* (quoting *Montana*,

440 U.S. at 153-54). In short, the doctrine embodies the principle "that a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting the Restatement (Second) of Judgments ch. 1 at 6 (1982)).

The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action" for *res judicata* purposes. *U.S. Industs. Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985). "In addressing the cause-of-action question, the Restatement speaks in terms of a transaction or series of transactions and gives 'weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting the Restatement (Second) of Judgments § 23(2) (1982)). "The Restatement approach reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Id.* (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1], at 359 (1983)). The D.C. Circuit in *U.S. Industries* specifically examined whether there was an identity of parties, an identity of subject matter, and an identity of contract between the two cases, and whether there was a final adjudication on the merits in the prior case. *Id.* at 206.

Because the defense of *res judicata* is of jurisdictional character, courts can and should raise the issue *sua sponte*. *Stanton*, 127 F.3d at 77 (D.C. Cir. 1997) ("As *res judicata* belongs to courts as well as to litigants, even a *party's* forfeiture of the right to assert it . . . does not destroy a *court's* ability to consider the issue *sua sponte*."). Noting that "D.C. courts articulating the doctrine [of *res judicata*] commonly cite federal cases applying federal law," the D.C. Circuit has

4

"discern[ed] no material differences in the District of Columbia's law of *res judicata* and the federal common law of *res judicata*." *Id.* at 78 n.4.

## II. DISCUSSION

Although the Court did not previously reach the merits of Rev. Hobley's wage-and-hour and false-accusation claims in Civil Action Nos. 04-314 and 04-492, its determination that those claims fell within the scope of the parties' arbitration agreement was a decision on the merits of the applicability[2] and enforceability[3] of that agreement. *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 65 (1995) (reaffirming that the Federal Arbitration Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms"). Thus, because Rev. Hobley's latest eleven suits clearly involve the same parties, they are barred by *res judicata* if based on the "same cause of action" as Nos. 04-314 or 04-492. *Apotex*, 393 F.3d at 217. That depends largely on the factual and legal underpinnings of each complaint, uniformly spare as they are, which follow:

- In No. 05-521, Rev. Hobley sues KFC for false arrest, alleging that Olu Adepegba, a KFC General Manager, falsely told MPD officers that Rev. Hobley had stolen the missing funds. This complaint also alleges that Mr. Adepegba lied to KFC's payroll depertment, forged Rev. Hobley's signature, and cashed Rev. Hobley's final

---

[2] As to applicability, the Court concluded that both the wage-and-hour claim, *Hobley v. Ky. Fried Chicken Inc.*, No. 04-492, Mem. Op. at 5-6 (D.D.C. Aug. 3, 2004) (unpublished), and the false-accusation claim, *Hobley*, 2004 U.S. Dist. LEXIS 27552, at *8, fell within the scope of the arbitration agreement.

[3] Although enforceability was not directly litigated, the Court noted that the same arbitration agreement had been held "valid and enforceable" on other occasions, *Hobley*, Mem. Op. at 5 (D.D.C. Aug. 3, 2004) (unpublished), and on appeal the D.C. Circuit held that Rev. Hobley had waived his arguments as to the agreement's enforceability. *Hobley*, 2005 U.S. App. LEXIS 19633, at *4 ("[B]ecause appellant did not raise arguments in the district court concerning hearsay, the alleged illusory nature of the arbitration agreement, unconscionability, and the unequal bargaining power between the parties, he has waived such issues on appeal.").

paycheck.

- In No. 05-522, Rev. Hobley sues KFC for defamation, alleging that Marcus Jackson, a KFC Area Coach, also falsely reported to the MPD that Rev. Hobley had stolen the missing funds. This complaint also alleges that Mr. Jackson presented "misleading information and wrong documentation" to the Superior Court to persuade it of Rev. Hobley's guilt.

- In No. 05-523, Rev. Hobley sues KFC for malicious prosecution, alleging simply that he was terminated by Mr. Jackson on February 9, 2003, arrested at home on June 13, 2003, and acquitted of first-degree theft on February 2, 2004.

- In No. 05-608, Rev. Hobley sues KFC for "identity theft," alleging that Mr. Adepegba, acting in his capacity as General Manager, misrepresented Rev. Hobley's employment dates to KFC's payroll department, misappropriated Rev. Hobley's final paycheck (among others), forged Rev. Hobley's signature, and deposited the checks in KFC's account, all in an effort to replace funds that Mr. Adepegba had himself stolen from KFC.

- In No. 05-1003, Rev. Hobley sues KFC for "forgery," alleging that what purport to be his initials on the parties' binding arbitration agreement are inauthentic, and submitting that KFC's claims to the contrary are "fraudulent, deceptive, and preposterous at best."

- In No. 05-1551, Rev. Hobley sues KFC for "irreparable damages to [his] impeccable reputation," alleging only that Mr. Adepegba falsely told MPD officers that Rev. Hobley had stolen the missing funds, and that Rev. Hobley was charged with and acquitted of first-degree theft.

- In No. 05-1552, Rev. Hobley sues KFC for libel and slander. This complaint, based on Rev. Hobley's receipt of a letter from the D.C. Department of Employment Services, which requested that he submit a "rebuttal statement" regarding the "claim of theft alleged by Marcus Jackson," appears to allege that Mr. Jackson, like Mr. Adepegba, falsely told authorities that Rev. Hobley was responsible for stealing the missing funds.

- In No. 05-1574, Rev. Hobley sues KFC for "Fraud/Cover Up," alleging that, during the course of this litigation, KFC, through counsel, (i) deliberately made false statements to the Court in its response to Rev. Hobley's complaint and in its motion to enforce the arbitration agreement, (ii) improperly refused to acknowledge certain facts that Rev. Hobley asserts were established during his criminal proceedings in Superior Court, and (iii) deliberately mischaracterized facts in its brief on appeal to the D.C. Circuit. Rev. Hobley submits that these "false statements are a mere

6

transparent attempt to cover-up the fraudulent 'scam' activities" of Mr. Adepegba and "deprive [him] of his right to due process, simply because of his pro se representation."

- In No. 05-1707, Rev. Hobley sues KFC for "a frame-up," alleging that Mr. Adepegba's reports to MPD investigators that Rev. Hobley had stolen the missing funds were based on "false evidence" and "deceit."

- In No. 05-1708, Rev. Hobley sues KFC for "deceit, libel, and slander," alleging that legal arguments made by KFC's counsel in pleadings and in open court — such as "KFC could sue [Rev. Hobley] for conversion of funds" and "Rev. Hobley's case is 'indistinguishable' from the Fleck and Morgan case[s]" — amount to defamation because they "insinuate" that Rev. Hobley is guilty of theft despite his having been acquitted of that charge.

- In No. 05-2190, Rev. Hobley alleges that Mr. Adepegba's false statements to the MPD constitute a breach of the arbitration agreement, and that this breach led to Rev. Hobley's false arrest, malicious prosecution, and defamation.

### A. *Res Judicata*

As the above summary makes clear, the bulk of these eleven new claims quite plainly "aris[es] out of the same transaction or occurrence" as the claims in Nos. 04-314 and 04-492. *See U.S. Industs.*, 765 F.2d at 205. In applying the *res judicata* doctrine, the D.C. Circuit has looked closely at the factual allegations underlying similar claims, finding it relevant — indeed, "pivotal" — that "the facts [plaintiff] chose to assert as relevant in each of the two complaints are nearly identical." *Id.* at 206. That is certainly the case here. The factual allegations in Nos. 05-521, 05-522, 05-523, 05-608, 05-1551, 05-1552, and 05-1707 focus exclusively on Mr. Adepegba's alleged misappropriation of Rev. Hobley's final paycheck (the subject of the wage-and-hour claim in No. 04-314) and Messrs. Adepegba's and Jackson's allegedly false allegations to MPD officers that led to Rev. Hobley's arrest for first-degree theft (the subject of the false-accusation claim in No. 04-492). The Court has already determined that such claims fall within the scope of the arbitration

agreement.[4]  Moreover, the factual allegations in Nos. 05-1003 and 05-2190 focus on the validity of the governing arbitration agreement, which has likewise been adjudicated.[5]  Applying the Restatement's "pragmatic, transactional approach" adopted by the D.C. Circuit, the Court concludes that the claims in Nos. 05-521, 05-522, 05-523, 05-608, 05-1551, 05-1552, 05-1707, 05-1003, and 05-2190 constitute the "same cause of action" as those previously litigated in Nos. 04-314 and 04-492.  *See Apotex*, 393 F.3d at 217; *U.S. Industs.*, 765 F.2d at 205.  These cases are thus barred by the doctrine of *res judicata*, and the Court will grant KFC's motions to dismiss them.[6]  See *U.S. Industs.*, 765 F.2d at 209.

### B.  Judicial Proceedings Privilege

Nos. 05-1574 and 05-1708, which focus exclusively on the conduct of KFC's counsel during litigation of Nos. 04-314 and 04-492 in this Court and in the Court of Appeals,[7] stand on slightly different footing.  Although they are in a sense derivative of the barred claims, they arguably stem from a different transaction (the allegedly defamatory or otherwise improper conduct of counsel during litigation) than the transactions at issue in Nos. 04-314 and 04-492 (the wage-and-hour and

---

[4]  *See supra* note 3 and accompanying text.

[5]  *See supra* note 4 and accompanying text.

[6]  KFC has not filed a motion to dismiss in No. 05-1003.  Nevertheless, because it is clear, for the reasons discussed in the text, that this claim is precluded by *res judicata*, the Court dismisses it *sua sponte*.  *See Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (appropriate for district court to sua sponte dismiss a complaint pursuant to Rule 12(b)(6) where "it is patently obvious that [the plaintiff] could not have prevailed on the facts alleged in his complaint").

[7]  In No. 05-1574, ¶¶ 6-8 of the Complaint reference counsel's factual characterizations in this Court in No. 04-314, and ¶¶ 11-12 refer to counsel's factual characterizations on appeal in No. 04-492.  Likewise, in No. 05-1708, ¶¶ 6-8 refer to counsel's legal arguments in this Court and on appeal in No. 04-492.

false-accusation claims). Indeed, as KFC acknowledges in its motions to dismiss, these claims are "arguably not subject to the arbitration agreement." No. 05-1574, Dkt. #4, at 4; No. 05-1708, Dkt. #4, at 4. The Court need not dwell on this issue, however, because in any event the statements are protected by the judicial proceedings privilege. As the D.C. Circuit has explained,

> In communications during the course and as a part of a judicial proceeding in which an attorney participates as counsel, he is protected by an absolute privilege to publish false and defamatory matter of another so long as it has some relation to the proceeding. The privilege immunizes the attorney from liability for defamation despite the purpose underlying its publication, and notwithstanding belief or even knowledge as to its falsity. And while the communication, to trigger the privilege, must have some relation to the proceeding, it need not be relevant in the legal sense; it suffices that it has enough appearance of connection with the case . . . so that a reasonable man might think [it] relevant. For, as we have explained, the doctrine of absolute immunity for statements in judicial proceedings reflects a judgment that the need for completely free speech for litigants is dominant, and that this freedom is not to be endangered by subjecting parties to the burden of defending their motives in subsequent [defamatory] litigation, or to the risk that juries may misapprehend those motives.

*United States v. Hurt*, 543 F.2d 162, 167 (D.C. Cir. 1976) (footnotes and internal quotation marks omitted; alterations in original); *see also Young v. Young*, 18 F.2d 807, 808-809 (D.C. Cir. 1927). In explaining these principles, the D.C. Circuit has also relied on the Restatement of Torts § 586, which states:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977); *see Hurt*, 543 F.2d at 167 n.24 (citing the original Restatement); *see also Messina v. Fontana*, 260 F. Supp. 2d 173, 177-78 (D.D.C. 2003).

9

Here, even assuming that the statements at issue are indeed defamatory, they meet the dual requirements of the absolute privilege. First, as Rev. Hobley himself makes clear in his complaint, they were made either in open court or in legal pleadings, and were thus published by counsel "during the course[] and as a part of a judicial proceeding." Restatement (Second) of Torts § 586. Second, the Court finds that the statements complained of — namely, "KFC could sue [Rev. Hobley] for conversion of funds" and "Rev. Hobley's case is 'indistinguishable' from the Fleck and Morgan case[s]" — have enough appearance of connection with this case that a reasonable man might think them relevant. *See Hurt*, 543 F.2d at 167 ("[W]hile the communication, to trigger the privilege, must have some relation to the proceeding, it need not be relevant in the legal sense; it suffices that it has enough appearance of connection with the case . . . so that a reasonable man might think [it] relevant."). Thus, the statements, even if defamatory, are absolutely privileged. The Court will therefore grant KFC's motions to dismiss Nos. 05-1574 and 05-1708 for failure to state a claim.

**C. Sanctions**

Rev. Hobley has filed a multitude of motions in connection with each of the cases the Court now dismisses. The docket of the first of these eleven cases, No. 05-521, is representative. In that case, in addition to filing an opposition to KFC's motions to enforce the arbitration agreement and dismiss the case [Dkt. #9], Rev. Hobley also filed a "Motion to Exercise His Constitutional Right to Equitable Relief in a Court of Competent Jurisdiction" [Dkt. #11], a "Motion to Request the Court to Deny [sic] the Defendant's Motion to Enforce an Arbitration Agreement" [Dkt. #14]; a wholly duplicative "Motion Summary to Exercise His Right to Equitable Relief in a Court of Competent Jurisdiction" [Dkt. #13]; and a "Motion of Proof that the Defendant . . . Saw This Matter as Criminal and Not an Employment Dispute Subject to an Arbitration Agreement" [Dkt. #16]. In

view of the Court's decision today, all such pending motions in all cases will be denied as moot.

KFC understandably moves the Court to sanction Rev. Hobley for vexatious litigation, asking that he be required to seek leave to file further complaints against KFC, and that he bear KFC's costs and attorneys' fees incurred in response to his complaints and motions. It is well settled that, pursuant to its "obligation to protect the orderly and expeditious administration of justice . . . [and] the integrity of the courts, the district court judge may use injunctive remedies." *In re Powell*, 851 F.2d 427, 430 (D.C. Cir. 1988) (citation and internal quotation marks omitted). However, "in fashioning an appropriate remedy, the court [must] take great care not to unduly impair a litigant's constitutional right of access to the courts." *Id.* The "extreme remedy" of an injunction, therefore, "should be used only in exigent circumstances" and should "remain very much the exception to the general rule of free access to the courts." *Id.* at 431. Moreover, "the use of such measures against a *pro se* plaintiff should be approached with particular caution." *Id.*

The D.C. Circuit has instructed that, before issuing an injunction, a district court must (1) create an adequate record for appellate review; (2) provide, in the case of *pro se* litigants, an opportunity to oppose the entry of such an order; and (3) make "substantive findings as to the frivolous or harassing nature of the litigant's actions." *Id.* That a complaint lacks merit is insufficient to deem it frivolous. As the D.C. Circuit has explained in a slightly different context, "if the complaint has at least an *arguable* basis in law and fact — if the complaint is *viable* — it cannot be deemed frivolous." *Brandon v. D.C. Bd. of Parole*, 734 F.2d 56, 59 (D.C. Cir. 1984) (addressing *sua sponte* dismissals of unmeritorious *in forma pauperis* complaints); *see also id.* at 432 (asking whether complaints were "irrational," "incoherent," evidenced a "complete lack of any substantive allegations," or amounted to "meritless, fanciful claims"). "[M]ultiple filings alone

11

cannot be a predicate to a finding of frivolousness." *Powell*, 851 F.2d at 434 n.14. The analytical framework for harassment, by contrast, weighs "the number and content of [the plaintiff's] filings and the effect of those filings on the [defendant] and the district court." *Id.* at 433. The D.C. Circuit specifically evaluates whether a "pattern of harassment" exists, and has insisted that "there be some indication in the record supportive of such a conclusion," such as evidence that a plaintiff's requests "are perceived as burdensome and oppressive" by the defendant. *Id.*

Although, as discussed *supra* in Part II.A-B, Rev. Hobley's complaints clearly lack merit, the Court cannot conclude that they rise to the level of frivolousness warranting injunctive relief. Though several either lack a cognizable legal theory or are thin on substantive allegations, viewed together they evidence the lack of legal training common of *pro se* plaintiffs more than they resemble the irrational, incoherent, or fanciful complaints that have traditionally been deemed frivolous. *Cf. Urban v. United Nations*, 768 F.2d 1497, 1499 (D.C. Cir. 1985) (plaintiff "demands that an unspecified state or governmental entity pay his living and working expenses while he does battle against injustice"). Rev. Hobley's complaints, though deficient, are not irrational or incoherent; his grievance is real, not imagined.

The number and content of plaintiff's complaints and motions, however, give rise to the inference that Rev. Hobley, unhappy with unfavorable rulings, seeks to harass KFC and burden the Court with duplicative filings. The eleven complaints the Court dismisses today were filed in Superior Court during an eight-month period in 2005; ten of those complaints were filed in the six months between February and August of that year. Although the Court stayed five of those actions pending resolution of Rev. Hobley's appeal in No. 04-492, Rev. Hobley filed five more before the D.C. Circuit issued its September 9, 2005, judgment disposing of that appeal. In October 2005, Rev.

Hobley filed the eleventh complaint in Superior Court, and in November, filed nearly fifty duplicative motions in connection with these cases.  KFC has diligently responded to each of these complaints and to many of the associated motions, while from the start complaining that the filings were "plainly intended to harass KFC" and "rehash[] the same facts."  *See, e.g.*, No. 05-521, Dkt. #4, at 7-8.  It is patently clear that KFC views these complaints and motions as burdensome, oppressive, and wasteful, and the Court agrees.  *See Powell*, 851 F.2d at 433.

The Court has accorded Rev. Hobley great leeway in view of his status as a *pro se* litigant; however, it has repeatedly instructed him, most recently during a Status Conference on Nov. 28, 2005, that both this Court and the Court of Appeals have determined that the central facts of which he complains — the alleged wage-and-hour violations relating to the issuance of his final paycheck and the alleged false accusations leading to his arrest and trial — are subject to arbitration.  Nonetheless, in view of his *pro se* status, the Court is not convinced that Rev. Hobley's conduct constitutes a "pattern of harassment" warranting the extraordinary remedy of an injunction, and — for now — will deny without prejudice KFC's motions for sanctions.  *See id.* at 433-34.  Rev. Hobley shall take notice, however, that should he continue to file complaints against KFC concerning the instant set of facts, or should he repeatedly file motions identical in substance, the Court will revisit this issue and may then award injunctive or monetary relief to KFC.

### III. CONCLUSION

For the reasons stated above, the Court will: consolidate the above-captioned cases; vacate the stay; grant KFC's motions to dismiss Nos. 05-521, 05-522, 05-523, 05-608, 05-1551, 05-1552, 05-1574, 05-1707, 05-1708, and 05-2190; dismiss *sua sponte* No. 05-1003 pursuant to Rule 12(b)(6); grant KFC's motions to enforce the arbitration agreement; deny without prejudice KFC's

motions for sanctions; and deny as moot all other pending motions.  The Court again cautions Rev. Hobley against filing duplicative complaints and motions based on the instant set of facts, and advises that if he persists in this course, the Court will reconsider whether his conduct amounts to a pattern of harassment or abuse of the judicial process.  That the arbitration agreement is valid and governs the central events of which he complains is *res judicata*; his repeated filings in this Court are a wasteful and futile means to register disagreement with that result.

        A separate Order accompanies this Memorandum Opinion.

Date: January 31, 2006                                      /s/
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge